# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>ERIC JAMES DE WEERD and DANIELLE MARIE SIRIANNI-DE WEERD,<br><br>                        Debtors.<br><br>ERIC DE WEERD,<br><br>                        Plaintiff,<br><br>                        vs.<br><br>ROBERT PETERSON JR.,<br><br>                        Defendant. | Case No. 17-02421-JW<br><br><br><br><br><br><br><br>**ADVERSARY COMPLAINT**<br><br>**ADV. PRO. NO.** |

**COMPLAINT (I) TO LIQUIDATE AND COMPEL TURNOVER OF ESTATE PROPERTY, (II) FOR JUDICIAL DISSOLUTION, (III) TO COMPEL SALE OF PROPERTY OF THE ESTATE UNDER 11 U.S.C. §363(h) AND (IV) FOR RECOVERY OF DAMAGES FOR VARIOUS TORTS AND CONTRACT CLAIMS**

Eric De Weerd ("Plaintiff" or "De Weerd"), by and through his undersigned counsel, as and for his adversary complaint against Robert Peterson Jr. ("Peterson" or "Defendant") respectfully states as follows:

**I. NATURE OF THE ACTION**

1. De Weerd brings this action against Peterson to liquidate and recover (i) property of the estate pursuant to section 542(a) of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) recover a debt that is property of the estate pursuant to Bankruptcy Code section

542(b), (iii) for judicial dissolution of limited liability company, and (iv) damages for (a) breach of contract, (b) breach of fiduciary duty, (c) misappropriation of corporate opportunity and (d) breach of covenant of good faith and fair dealing,

## II. PARTIES

1. Plaintiff, Eric De Weerd ("Plaintiff" or De Weerd"), is a resident of Beaufort County, South Carolina.

2. Defendant Robert Peterson, Jr. ("Peterson") is a resident of Plano Texas.

## III. JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b). This action arises from and is related to the Debtor's case under title 11 of the United States Code, Case Number 17-02421-JW. This matter is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (E), (N), and (O). Moreover, the defendant has already submitted to the jurisdiction of this Court in connection with his appearance and motion to dismiss filed in De Weerd's previously filed (pro se) Chapter 11 bearing Case No. 16-0655 (see Doc#s 149, 150).

## IV. CLAIMS FOR RELIEF

### COUNT I
**(Turnover of Estate Property Under Section 542(a) of the Bankruptcy Code)**

4. De Weerd repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 3 of this Complaint as though fully set forth herein.

5. In or about 2004 De Weerd, Peterson and Todd Harrison ("Harrison") formed a Delaware limited liability company named AMS of Hilton Head Realty LLC ("HH Realty"). The ownership of HH Realty is as follows: De Weerd 40%; Harrison 10%; Peterson 50%.

2

6. A copy of HH Realty's operating agreement, setting forth the membership interests outlined in Paragraph 5 above, is attached hereto as Exhibit A.

7. HH Realty is a member managed LLC and De Weerd, Harrison and Peterson are the sole managers thereof.

8. Contemporaneous with the formation of HH Realty, De Weerd, Peterson and Harrison, formed Moving with Moxie, Inc. d/b/a All My Sons Moving & Storage ("Moxie"). Moxie was formed to operate an "All My Sons Moving and Storage Company" in Bluffton, South Carolina on business premises to be owned by and leased from HH Realty.

9. In or about 2004 HH Realty acquired real property located at 102 Bluffton Road, South Carolina (the "Bluffton Property"). The Bluffton Property is improved by a building containing an office and warehouse comprising approximately 16,500 s.f. Upon information and belief the Bluffton Property has a market value of approximately $2.2 million to $2.4 million.

10. Pursuant to a written lease agreement, Moxie leased from HH Realty the Bluffton Property pursuant to which it operated Moxie's moving and storage business threat.

11. The ownership of Moxie was structured the same as the ownership of HH Realty, to wit, De Weerd 40%, Harrison 10% and Peterson 50%.

12. De Weerd was the President and sole manager of Moxie, and ran and managed its day-to-day operations until he was unlawfully terminated in 2016. As more fully set forth in a separately filed complaint in the District of South Carolina, a true copy of which is attached hereto as Exhibit B, Peterson, together with other aiders and abettors, *inter alia*, fraudulently, tortiously and unlawfully converted De Weerd's equity interest in Moxie and terminated De Weerd's employment therefrom. The Debtor intends to file a second adversary proceeding against Peterson, Moxie and other defendants to recover other assets of property of the estate

13. Bankruptcy Code section 541(a) provides, in pertinent part, that the bankruptcy estate is comprised, among other things, of all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a).

14. De Weerd's interest in HH Realty constitutes property of the estate under Section 541.

15. Peterson owns a majority interest in and controls over sixty (60) All My Sons moving companies nationally, including a controlling interest in the All My Sons location in Dallas Texas that Harrison owns (40%) and manages.

16. Through his ownership and controlling interests in the moving companies owned and operated by De Weerd and Harrison, Peterson has been able to and continues to dominate and control HH Realty to the detriment of De Weerd.

17. On or about November 1, 2011 Peterson, De Weerd and Harrison agreed to have HH Realty lease the Bluffton Property to Moxie pursuant to a written lease agreement, a copy of which is attached hereto as Exhibit C ("2011 Bluffton Lease").  Pursuant to the Bluffton Lease #1 Moxie was obligated, among other things, to pay HH Realty (i)  $9,000 a month in rent and (ii) all real property taxes, totaling approximately $12,160 annually (or $1,013 per month), as additional rent.

18. Moxie failed to renew the 2011 Bluffton Lease by giving written notice as required  under Section 3(b) thereof, and the lease expired in accordance with its own terms on December 31, 2014.

19. Pursuant to Section 14.11 of the 2011 Bluffton Lease, commencing January 1, 2015, Moxie was required to pay HH Realty 150% of the base rent i.e. $13,500, plus the additional rent (which included the obligation to pay real property taxes).

4

20. Since the 2011 Bluffton Lease was entered into in 2011, the rental value of the Bluffton Property, and the value of said real property generally, has substantially increased.

21. Peterson has dominated and controlled HH Realty, and otherwise wasted its assets and usurped its opportunities, by subjugating HH Realty's interests to the interests of Moxie (which he owns 100% of, directly or indirectly, after the illegal ouster of De Weerd).

22. Peterson has conspired to cause Moxie to pay below market rates to HH Realty, and unlawfully and tortiously caused HH Realty to "accept" those terms.

23. Specifically, on or about July 1, 2016 Peterson, in violation of the express terms of the operating agreement, caused HH Realty to execute a new lease to Moxie for the Bluffton Property whereby HH Realty purported to decrease the total rental obligation of Moxie by approximately 33%. Specifically, whereas under the terms of the 2011 Bluffton Lease, and according to market conditions generally, Moxie was obligated to pay HH Realty $14,500 per month (including the real property taxes), Peterson, in a classic case of self-dealing and usurpation of corporate opportunity, executed a lease on behalf of both HH Realty and Moxie whereby Moxie is only obligated to pay $9,250 and HH Realty has assumed the liability of the real property taxes. Attached hereto as Exhibit D is a copy of the July 1, 2016 lease that Peterson executed, or caused to be executed, by both HH Realty and Moxie (hereafter the "2016 Bluffton Lease").

24. Section 3.3(c) of the operating agreement requires unanimous approval of the members of any leases that the company is a party to.

25. Peterson neither sought nor obtained De Weerd's consent or approval of the 2016 Bluffton Lease and the same is void *ab initio*.

26. Bankruptcy Code section 542(a) provides, in pertinent part, that "an entity, . . . in

5

possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. §542(a).   Bankruptcy Code section 541(a) provides, in pertinent part, that the bankruptcy estate is comprised, among other things, of all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a).

27. De Weerd is entitled to 40% of the difference between the rent and additional rent due under the Bluffton Lease #1 and the amounts actually paid by Moxie since January 1, 2015, which is believed to be no less than $63,800 (the "Waste Damages").

28. De Weerd's interest in the Waste Damages constitute property of the Estate as of the Petition Date pursuant to Bankruptcy Code section 541(a).

29. Under and pursuant to the HH Realty operating agreement HH Realty is required to make distributions to the members in accordance with the Company's cash flow.

30. Peterson has dominated and controlled HH Realty and otherwise tortiously caused HH Realty to fail to make any distributions to De Weerd notwithstanding the availability of cash flow therefor.

31. De Weerd's interest in distributions due from HH Realty constitute property of the Estate as of the Petition Date pursuant to Bankruptcy Code section 541(a).

### COUNT II
### (Breach of Fiduciary Duty)

32. De Weerd repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 31 of this Complaint as though fully set forth herein. _

33. Both under common law and pursuant to Del.C. §18-1104, Peterson owed and owes De Weerd a fiduciary duty of loyalty and care.

6

34. After De Weerd sought legal redress for, *inter alia*, his unlawful termination Peterson told Harrison that he would "he would appeal - appeal - appeal any verdict and never sell the warehouse to make sure he [De Weerd] never receives a dime".

35. In _____, 2015, Peterson tortiously and unlawfully and in breach of the HH Realty operating agreement unilaterally removed De Weerd from the bank account that HH Realty maintained at Bank of America.

36. Under Section 8.12 of the operating agreement, Peterson is appointed the tax matters partner.

37. According to the tax records of the County of Beaufort, HH Realty has failed to pay real property taxes for 2016.

38. Peterson's failure to ensure that HH Realty pays all tax liabilities constitutes a breach of fiduciary duty and breach of contract. By reason of Peterson's dereliction of duty and breach De Weerd's interest in HH realty has been damaged and compromised.

39. Peterson's subjugation of the interests of HH Realty to those of Moxie were knowing, intentional, made in bad faith and with the purpose of maliciously gaining leverage over De Weerd in connection with other legal disputes.

## COUNT III
**(Misappropriation and Diversion of Corporate Opportunities/Judicial Dissolution)**

40. De Weerd repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. At all times relevant hereto HH Realty was a single asset entity with the sole, legitimate purpose of generating rental income at market rates. The leasing of the Bluffton Property was central to and within the line of HH Realty's business.

42. HH Realty has an interest and expectancy in revenues and profits generated by the

7

leasing of the Bluffton Property.

43. De Weerd has an interest in the distributions generated by the commercial leasing of the Bluffton Property. Said interest constitutes property of the Estate as of the Petition Date pursuant to Bankruptcy Code section 541(a).

44. By failing to enforce the terms of Bluffton Lease #1, which would have resulted in monthly rental income of $13,500, Peterson misappropriated, diverted and usurped the opportunities of HH Realty, and otherwise tortiously preferred and benefited his own personal interest and those of Moxie.

45. Peterson's conduct was malicious in subjugating the interests of HH Realty was malicious in that he intended to harm De Weerd while simultaneously benefitting himself and Moxie financially

46. HH Realty was financially able to realize substantial profits from the leasing of its single asset, to wit, 102 Bluffton Road, Bluffton, S.C.

47. By reason of the foregoing De Weerd has been damaged in an amount to be proven at trial.

48. By reason of the forgoing HH Realty should be dissolved and the Bluffton Property sold.

### COUNT IV
### (Breach of Contract)

49. De Weerd repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. Peterson has breached the terms of the operating agreement in numerous ways as set forth above and herein.

51. By reason of said breach De Weerd has been damaged in an amount to be proven at trial.

## COUNT V
### (Judicial Dissolution Under Delaware Limited Liability Company Act §18–802)

52. De Weerd repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53. HH Realty's operating agreement provides it shall be governed and enforced in accordance with Delaware law.

54. Delaware Limited Liability Company Act §18–802 provides:

> On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement.

55. De Weerd and Harrison, comprising 50% of the ownership of HH Realty, both want to sell the Bluffton Property and liquidate their interests in the Company.

Section 3.3 of the operating agreement provides:

Decisions Requiring Majority Vote. The following decisions shall require the written approval of, or the affirmative vote by, Members holding more than fifty percent (50%) of the LLC interests:

   (a) sale of all or substantially all of the assets of the Company;
   (b) distribution of cash or other property to Members (other than as authorized herein);
   (c) execution and delivery of documents conveying interests in real property, including leases and mortgages;
   (d) approval of capital and operating budgets;
   (e) merger or consolidation with another entity;
   (f) admission of any new Member or Members;
   (g) redemption of a member's interest except as provided herein; and
   (h) amendment of this Agreement.

56. Peterson refuses to sell the Bluffton Property because he wants to continue to

9

have Moxie reap the benefits of a grossly under-market rental rate provided for in the 2016 Bluffton Lease.

57. There is a deadlock between De Weerd and Harrison on the one hand, and Peterson on the other.

58. It is not reasonably practicable to carry on the business of HH Realty and the same should be dissolved immediately.

## COUNT VI
### (Sale of the Bluffton Property Under 11 U.S.C. §363(h))

59. De Weerd repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 58 of this Complaint as though fully set forth herein. _

60. 11 U.S.C. 363(h) provides:

Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

61. The Debtor holds his membership interests in HH Realty as a tenant in common with Harrison and Peterson.

62. Partition of the interests in HH Realty among the Debtor's estate and Harrison and Peterson is impracticable.

63. The sale of the Debtor's undivided interest in HH Realty would realize significantly less for the estate than sale of such property free of the interests of such co-owners.

64. The benefit to the Debtor's estate of a sale of his interest in HH Realty property free of the interests of Harrison and Peterson outweighs the detriment, if any, to them.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** for the reasons set forth herein, De Weerd respectfully requests that the Court enter the following relief:

1) For Count I of this Complaint, an order compelling turnover of the Waste Amounts as property of the Estate pursuant to Bankruptcy Code section 542(a);

2) For Count II of this Complaint, a judgment in favor of De Weerd against Peterson awarding damages for breach of fiduciary duty in an amount to be proven at trial;

3) For Count III of this Complaint, a judgment in favor of De Weerd against Peterson awarding damages for misappropriation of corporate opportunity in an amount to be proven at trial;

4) For Count IV of this Complaint, a judgment in favor of De Weerd against Peterson awarding damages for breach of contract in an amount to be proven at trial;

5) For Count V of this Complaint, a judgment and order dissolving HH Realty and directing and ordering the appointment of a receiver to sell and liquidate all of the assets of HH Realty, including but not limited to the sale of the Bluffton Property;

6) For Count VI of this Complaint, a judgment and order compelling the sale of HH Realty and distribution of proceeds to De Weerd (40%), Harrison (10% and Peterson (10%).

7) On all counts, for pre-judgment and post-judgment interest, attorneys' fees

and costs; and

      8) That such other and further relief be awarded as this Court deems just and proper.

June 2, 2017
North Charleston, South Carolina

                /s/ F. Truett Nettles II
                F. Truett Nettles, II, Esq.
                ID# 2520
                FINKEL LAW FIRM LLC
                4000 Faber Place Drive, Suite 450
                North Charleston, SC 29405
                (843) 577-5460
                tnettles@finkellaw.com
                Proposed Attorneys for Plaintiff

                Ruta Soulios & Stratis LLP
                Proposed Counsel to Debtors

                By: /s/ Steven A. Soulios
                      Steven A. Soulios
                211 East 43rd Street, 24th Floor
                New York, New York 10017
                (212) 997-4500
                Application for admission *pro hac vice*
                forthcoming